Your Honor, the first case this morning is called 213-0422, Betty Weeks v. La-Tara Pizza, Duty Businesses, Giuseppe's Pizza, et al. On behalf of the Avalanche, Ms. Mary I. Wood. On behalf of the Appalachians, Mr. John W. Thomas. Good morning, Counsel. Ms. Wood, on behalf of the Appalachians, you may proceed. Thank you. May it please the Court. We are here today appealing summary judgment that was granted by the lower court in favor of the defendants. I assume that the justices have all read the written submissions, and I assume you wish me to refrain from giving a statement of the facts, or would you like to hear? I need to be aware of the facts. Focus on the issue of duty. Okay, okay. In order to have a duty, a landowner has to have notice of a defect, and that notice can be either actual notice or constructive notice. You can see there was no actual notice. Yes, yes. At least there's been no evidence to indicate that there was actual notice. But we believe that constructive notice exists, or at least a genuine issue of material fact exists regarding the question of constructive notice. And that would be based on what? I mean, I suppose you could make an argument, candidly speaking, that at some point, for the sake of the argument, it could be an issue as to whether or not the pipe extended above the roof. But what specific evidence is there on the issue of constructive notice that the defendants had some knowledge of this pipe? Well, it's whether they should have had knowledge of the pipe. And one of the issues that courts look at is that a duty can exist if a hazard was present for a long enough period of time that through the exercise of due care it should have been discovered. Even if it wasn't discovered, it should have been through the exercise of due care based on the length of time that it was in existence. What would have been an exercise of due care? Were they supposed to deconstruct the roof, go on the roof? How do we tie this into this duty of care? Well, we know that there was, on at least two occasions, there was work performed in or near the area where this pipe was located. One was there was a kitchen fire that resulted in some smoke damage. A drop ceiling was installed as part of the repair that was in the dining room in the area where this pipe fell through. Another issue was a roof was leaking, and people were up on it. It's a flat roof, and they were on the roof, and they were re-tarring the entire roof. And according to Mr. Murphy, our retained expert, anyone familiar with plumbing systems or with buildings, contracting in general? We've read the record and all the arguments. Okay. These are restaurant owners, and when they had a problem, they hired a roofer to fix the roof. When they have a plumbing problem, they hire a plumber to fix the plumbing. Correct. Tell us what is there, in the exercise of reasonable care, what evidence is there that they should have been aware of this latent defect? What evidence is there? Your expert testified that he was not aware of any, either aware of any, not aware of any evidence that showed that the defendants were aware of the existence of the pipe or should have been aware of the dangerous condition. That was essentially his testimony at the deposition, correct? Well, he said they should have been aware of it because Because they own, I read the deposit. He said they should have been aware of it because they own the building. Well, and because if there are a greater number of vent pipes protruding through the roof of a building than what you have in existence in the plumbing system, you know there's something amiss, and someone should have taken a look. Hey, we've got five vent pipes and only two active vent pipes in the current plumbing system. What are these other ones? Aren't you sort of making an assumption and filling in the gaps? I mean, can we, I see your argument, and it has some intuitive appeal, but is there some body of law that allows the knowledge of the construction people to be imputed to the owners? I don't see where you have any specific evidence of this other than this argument that, yeah, they should have. Homeowners should know a lot of things that, honestly, they don't know about. You're sort of saying there's a little bit of a gap there. I'm looking for the specific evidence that somebody told them there was a pipe above the roof. Do we have that here? They claim that they weren't aware there was a pipe on the roof, but I think that being aware of it and should be aware of it are two different things, and someone saying I wasn't aware but I should have been, that's constructive notice. Was there any evidence that after the pipe fell that the hole left by the pipe created any leaks? Created what? Created leaks in the roof. My understanding is that Mr. Gallagher, the plumber and the son-in-law of the defendants who came in shortly after the pipe fell, he made whatever repairs were necessary to the area. He was the only one that actually saw that area immediately after the pipe fell. He repaired the ceiling and removed the other piece of pipe. Was there evidence that he actually repaired the roof as well? His testimony was that he made repairs to the area and took down the other pipe that was in the ceiling. If I may, I know I've cited to some cases. I don't want to go into long discussions of case law that you've already read, but I think there are some similarities to the Sparling case, the Illinois Supreme Court case from 1974. In that case, that involved a little girl who was burned when she fell into a fire that was concealed under a pile of coal dust. There are some interesting similarities there. The land had been converted from its purpose as mining land to some other purpose before her father purchased this property. So whatever the hazard was predated her dad's ownership of the property. There was no evidence there that the father was aware of the smoldering fire underneath the slack pile. He testified that he hardly ever went out there by the slack pile and that if he had, it was sort of concealed. The court held that the six and a half year time period that elapsed between him buying that property and his daughter falling down into the fire, that six and a half years was a question for the jury to decide whether that was a long enough time that he should have discovered that fire. You know, when I read the case, I concede that was a good analogy, but there's one very important distinguishing factor here that we don't have here. The case there, I think, clearly turned on. The defendants admitted they could smell smoke. The odor of the smoke signals a potential hazard. We don't have that here. What signaled, what can you point to that would have signaled the defendants in this case of the hazard? Here you have the smelling of smoke, correct? Well, that's interesting too, because what the father testified to there was that he occasionally could smell something that he wasn't sure if it was smoke or a sulfur odor, and he assumed that that odor was coming from a mine shaft, not that it was coming from this slack pile. Yes, but he did smell something that arguably signaled some hazard, some problem. To me, the better analogy would have been in this case, as Justice Burkett noted, that at some point the defendants noted some water leaking from somewhere. That would be a better analogy, would it not? Because then they notice that something is amiss. He's smelling the smoke. You know, I don't see the smoking gun here, if you will. Well, they actually did notice some leaking at some point. In approximately 1990, I believe. Eighteen years earlier. Well, they were up on the roof, and there was some retarring being done. Were they on the roof, or were some workers on the roof? Well, I don't mean that Mr. and Mrs. Latuka personally were on the roof, but business owners do have a duty to inspect their property and find any hazards that exist. You can't just fail to inspect. Do you have a case that says that? Yes, I believe I do. You can't just fail to inspect your land. I believe this Farling case. The Farling case holds that it's a question for the jury to decide whether six and a half years is a reasonable time to discover and remedy a hazard. And I believe there was some commentary to the effect that you can't just put your head in the sand, fail to inspect your property, and then say, well, we didn't know. But there has to be some reason to inspect that particular area, as Justice Hudson pointed out. The smell of smoke, a leaking roof, some evidence. There was a leaking roof. Eighteen years earlier, and they repaired it, and the building passed inspection by the city, correct? Well, the interesting thing there, and I think Mr. Murphy talked about this, is that it may have passed inspection for the way the tar was applied to the roof, but the city doesn't come out and scrutinize everything. And the mere absence of citations for code violations doesn't mean everything is up to code. He said they give these code violation citations reactively after something happens, not proactively to prevent something from happening. So the fact that this pipe hasn't gone through the ceiling yet doesn't mean that it was compliant with the code. Is that when the roof was replaced? The roof was just re-tarred back in 1990. Was there a point in time where the roof was replaced entirely or no? Not to my knowledge, not during the time. So it's just the re-tarring. Correct. However, you know, I mean, I think a business owner would have an obligation. This is a flat roof, and you have to, you know, pay more attention to flat roofs than you do to slanted roofs, because snow piles up on these things. I mean, there are any number of occasions why business owners of a flat roof building would have people up on the roofs, whether they went up there themselves or not. And the presence of extra number of vent pipes, more than what's in use in the current system, would alert somebody, hey, there's a problem here. And hopefully the contractor would pick up on that, right? Because the restaurant owner would be relying on him to do that, I would think. I would think too, but I think that according to every case I've read, the duty falls to the owner of the property, whether they hire someone, do it themselves, get their son-in-law to do it, or whoever. The duty is for the landowner to make a reasonable effort to investigate, find hazards, and fix them. And I think in this case, the mere fact that there are differing opinions between these two people on whether this pipe was visible, whether it should have been discovered, the two people being Mr. Gallagher, the plumber, and the son-in-law, versus Mr. Murphy, I think the trial court got to the issue. Gallagher was the son-in-law of the defendants? Gallagher is the son-in-law of the defendants. He's the one who went up and made whatever repairs were necessary, opined that possibly a second pipe that was in the ceiling, that this vent pipe might have been fastened up there in the same way that this other pipe was fastened up, that was the son-in-law of the defendants. Mr. Murphy disagrees that they were fastened up there in the same way, and we don't really know even that they were the same kind of pipe. What difference does that make? Well, the difference it makes in terms of what Mr. Gallagher claims is that the pipe he found was horizontally strapped to a ceiling joist. It wasn't protruding out the top of the roof. But what difference does that make with respect to what the owners should have known or might have known, should have known, which is what the issue is for constructive notice, what difference does that make? It makes a difference whether it was horizontally strapped to a ceiling joist where it wouldn't have been protruding through the roof or visible from underneath or where it was protruding through the roof. But if it's protruding through the roof or strapped, what difference does that make? Is the owner, is he supposed to know that there's a pipe on the roof when he's hired roofers who've repaired the roofs 18 years go by, the roof and the ceiling, everything is working just fine, and then suddenly one evening a pipe falls through the ceiling? I think that the re-tarring of the roof, that probably wasn't the only occasion in those 18 years where anyone had any reason to be on the roof. As I said, it's a flat roof. You have to make sure that ice and snow don't accumulate up there. That's pure speculation. Summary judgment, but you still have an obligation to put forth facts, creating a material issue. It can't be based on speculation. Correct. What's the evidence that they should have been on the roof to find out that that pipe was, assuming that the court were to accept Mr. Murphy's testimony, that they were aware of the danger that that pipe was not affixed to anything, it was just being held in place by the tar, and one day would fall through the roof, creating an obvious danger? Where's the evidence of that? Well, I believe the evidence is Mr. Murphy explained that anyone doing any plumbing work, anyone doing any roofing work would realize there was something amiss with these. Again, you just pointed it out, anyone. It's not anyone. It's the defendants. Well, the defendants would be the people who are responsible for having that work done, and it is the business owner who the buck stops at them. They are the ones who have the duty to inspect and discover defects. Did anyone ever pull in discovery a bill that was given by the contractors that did this reconstruction? Did anyone ever bother to check a contractor's statement? I don't believe we have that. Well, wouldn't that have said whether or not the work that was done gave an indication about the pipe being moved, protruding, I mean, wouldn't that be one of the ways to prove what the defendants knew if they got a note from the contractor telling them they moved something? Well, if you're referring, Judge, to the reconstruction where the building was converted from its prior use into a restaurant. Whatever they did while they owned it. That wasn't done while the current defendants owned the building. That was previously done, so I don't even know if there's any knowledge of who did that work. Was any work done in the building after the defendants owned it regarding the roof? Other than re-tiring the roof and installing the new drop ceiling. Well, the installing of the new drop ceiling and tiring the roof, wouldn't that give some indication of what was done and what was changed or repaired, possible? I mean, I understand your theory, again, is intuitive appeal. They own the building, okay? They have people working on the building. But unless you can impute the knowledge of the contractors to the owners, and I'm not aware of any body of law that says you can do that automatically, that seems to be the breakdown there. That's why I asked if there was anything that could have been discoverable that would have shown, hey, they received a statement from the contractor saying that there was this pipe up there, they did this, they did that, they moved the pipe, they put a strap on, whatever. Well, I suppose that would have been actual notice. But constructive notice is that they should have known. And based on the existence of this pipe for the 27 years that these defendants occupied this building and performed work in the area where this pipe existed, that was sufficient time, or it's a question for the jury to decide, whether that was sufficient time to have discovered it and remedied that. I know I'm out of time. You're out of time on your original opening argument, but you will have time to address the Court in rebuttal. Thank you. Thank you. All right, Mr. Vance, you may proceed. May it please the Court, counsel. Good morning. With regards to the issue of constructive notice, I cited the Sparling case as well. And I think the obvious distinguishable factor there, factually, which the Court has already mentioned, is what could have put the owners of that property on notice in terms of constructive notice of the problem was the order of sulfur, the order of smoke, something that would have told them that, you know, there's something here that you ought to investigate, you ought to check out. We don't have that here. I cited Sparling for his quote from the restatement regarding the reason to know. Reason to know is defined as having information from which a person of reasonable intelligence would infer that the condition exists. There is simply no evidence in this record from which the defendants could infer that this pipe was hidden between the ceiling, the drywall ceiling at the bottom, and the roof, which was on the top of the floor joist. She alluded to some leaking of the roof, albeit 18 years earlier. Does that create any issue or effect for the fact finder? I don't believe so. It was not in the record. It was not in an area anywhere near this. It was in the perimeter, but, again, it was nonspecific. It did not result in anything, and there's no evidence that – Well, wouldn't that indicate there's some problem, quote-unquote, with the roof? I'm sure there were. You've got a flat roof that is periodically retired, and I think most people with some common knowledge would expect you're going to have some problems. But with regards to what's in the record, there's no evidence that there was any leaking in the area where this pipe fell from. And as the trial court pointed out, I mean, if in fact their theory were true that this pipe somehow protruded through what was concealed from below by the ceiling, which is what it was. I mean, if you were in the interior of the restaurant and before the draft ceiling was installed looked up at the ceiling, what you would see is a drywall ceiling and would have no indication of anything hidden above there such as this pipe. So going on about you saying your normal daily activities of running the restaurant, ordinary care, there's nothing that would put you on notice of a problem, is that what you're saying? Correct, correct. With regards to the roof, if what they're saying is true, that there was a pipe that was sticking, protruding above that roof and above the ceiling, it would catch water, it would funnel water right into that area. There's no evidence in the record that that ever occurred. So there is no information from which the defendant could infer that this condition, unlike the odor of sulfur, could infer that in between the ceiling and above or below the roof was hidden this pipe. And it's clear from the record that the defendants took possession of this property after it had already been converted into a restaurant. What it had been before, when it had been converted, who converted it from wherever it was into a restaurant, whoever disconnected this plumbing, that's all unknown. There is no evidence of it in the record. What is in the record is that when the defendants first began running the restaurant, it already was in its condition as it was at the time of the accident. They purchased it, they continued running it. What was found above this, in between the ceiling and the roof, was not an active part of the plumbing system. Now, the defendants had the building remodeled at some point, right? They had it as a result of a fire around 1990. They had the interior basically repainted, and they installed the drop ceiling below the drywall ceiling. Was there any evidence of work done on the roof? No. It was admitted by the plaintiff. There is no evidence, and the building department obviously came in and checked it out when that was done, found no code violations, and that was admitted by the plaintiff. Unlike what Ms. Woods said, that only building departments react to things and wouldn't check out something unless it was brought specifically to their attention, they haven't had the experience of dealing with the Rockford building department, which will make you jump through every hoop imaginable before they sign off on something because they see it as an opportunity to, you know, get some further work. There's no evidence there was any building code violation, anything of that nature, and she points out the fact that, yeah, we had the roof retired, we hung the drop ceiling on the interior, and those things somehow should have given us the information from which we could infer, the defendants could infer, the existence of this pipe concealed between the ceiling and the roof. And the fact of the matter is that's not the case. It gave us the opportunity to look and see, but there was no information provided by that from which we could infer that, you know what, I bet there's old plumbing up there that we ought to do something about. That's simply there's no evidence of that in the record. What do you make of the phrase, if you know the law, is new or should have known? So how do you interpret should have known if you've owned a restaurant for 18 years? Well, just as they did in Spartan, I think you've got should have known is based upon information from which an intelligent, reasonably intelligent person could infer the existence of something. It's not a, I guess we should have known everything. Certainly in hindsight, we should have known everything. But when you look at it at the time it occurs, you've got to have some information, you've got to have some evidence from which you could say, you know, they should have known. If they smelled sulfur on the property, they should have known there was something going on down there and checked it out. If they had, if there was evidence in the record that they had a continuous problem with leaking from the very spot that this pipe was, we'd have a different case. So are you saying that the phrase should have known could not be based on speculation and conjecture? Absolutely. Anything else? I'm not going to go beyond. I'm responding to the plaintiff's argument, which was focused on duty and constructive notice, and I assume that's what the court's interest is in hearing about. And I really, unless you have some further questions. In light of the concession, an actual notice, obviously constructive would be the issue. Right. All right. Thank you very much. Thank you. Ms. Wood, you may address the court in rebuttal, if you'd like. Thank you, yes. Thank you. Tried to make some notes to address some particular issues, so pardon me if I'm skipping around a little bit here. One of the last comments, should have known isn't based on speculation and conjecture. I agree, and we're not suggesting anyone should have ESP here and guess stuff that couldn't possibly be guessed or discover stuff that's impossible to discover. But should have known is based on a landowner's duty to inspect and discover hazards. And you asked about case law before. The Chapman case I cited out of the Fifth District, business owner must exercise reasonable care to discover and correct hazards. The Clark case out of the Fourth District, same thing, must discover and correct hazards. The Richardson case out of the First District in 2009, as well as the Sparling case. The case law also, the same one of the cases discussed where structures are not obviously dangerous and have been used for long periods of time, there's no additional duty to inspect where a structure appears to be fine. Britain versus University of Chicago Hospital, a revolving door that fails but had been used for a long period of time. Somebody's seriously injured, but there's no duty to inspect something that appears to be working. Here you have a roof that appears to be intact and working and a ceiling that's showing no signs of leaks. Where is the additional duty? In your brief, for example, you say a competent plumber should have been aware of the existence of the additional pipe. Correct. But we're talking about restaurant owners who, when they have a problem, they hire a plumber. They have a problem with the roof, they hire a roofer. Or they hire their son-in-law to come in and take care of plumbing and to do the repairs to the roof. That was after the fact. Well, I don't believe that was the only plumbing work that Mr. Gallagher had ever done for his in-laws. I believe that he routinely did work there and he was familiar with the place. There are cases, as you cited, where someone got injured on something that had never malfunctioned before, and that was that no hazard ever existed. It wasn't just that no one had notice of it. The hazard didn't exist prior to the injury. That's different than this case. They should have known because there were too many vent pipes extending up through the roof of the building than what were in use in the building. That should have alerted someone that there is a problem there or there is at least a need to check it out and find out what's going on. In the Sparling case, there wasn't an odor of smoke coming from this slack pile that really was a red flag or a smoking gun, so to speak, that should have alerted this guy that there was a fire under there. He said there was an occasional sulfur odor, which is different than an odor of smoldering coal. He said there's an occasional sulfur odor coming from a mine shaft in a different area.  Let's go back to the statement you just made, and that was the number of vent pipes and so forth. Actually, even though there might be too many vent pipes, that doesn't necessarily indicate some sort of circumstance that might be dangerous, though, does it? Well, it indicates that there's something there that shouldn't be there, and further investigation would have found that it was dangerous. In terms of the roof leak, the roof didn't have to be leaking in the very spot where this vent pipe was located for them to realize it. If the roof leaked, this is a flat roof, and as Mr. Franz pointed out, it has to be retard on an occasional basis. I don't know that this 18 years ago was the only time it was retard. That was a time when it was mentioned it was retard because it was leaking, but just being up on that roof would let you see all of the vent pipes that were up there. You don't have to be standing right near the vent pipe. The leak doesn't have to be near the vent pipe that fell for them to know that that was a problem. Just merely being up there and performing normal maintenance in that area, that would alert you to what's going on on the roof and the number of vent pipes that are up there. The duty to discover hazards, one of the aspects that's looked at is the length of time that this hazard existed, and the longer the length of time that it existed and wasn't discovered, that is seen as an issue of material fact for the jury to determine whether that was long enough that it should have been discovered. In the, I believe it was the Clark case, one week was not long enough for a farmer to discover a downed wire on his property. In the Sparling case, six and a half years, that was long enough to raise an issue of material fact about whether this landowner should have realized that a defect that he couldn't see, a defect that he didn't actually know existed, six and a half years was a long enough length of time that there was a question of fact about whether he should have known it. I argue that the 27 years that the defendants owned or occupied this building, despite the fact that they couldn't see this defect readily, 27 years, if six and a half years is an issue of fact about whether that's long enough, 27 years in this building is certainly an issue of fact about whether that was long enough that they should have discovered this. I know I'm out of time. Thanks. All right, thank you very much. Thank you. All right, I'd like to thank both counsel for their arguments here this morning. The matter will be taken under advisement. A written disposition will enter and be submitted in due course. We stand adjourned, subject to call. Thank you.